The next case is 19-1442, United States v. Lujan. Counsel, please prepare to argue by unmuting your microphones. Counsel, if you're ready, we're ready to hear you. May it please the court. My name is Ryan Ray, and I represent the defendant and appellant, Troy Lujan. This court should reverse Mr. Lujan's convictions and sentences for two reasons, both of which relate to an audio recording of an interrogation of Mr. Lujan that was made more than a year after the events leading to the charged offense occurred. Now, the most significant reason that reversal is required here is that the recording should have been excluded entirely under Federal Rule of Evidence 404B. There are three main reasons that reversal is required on that basis. First, the district court failed to articulate precisely the proper basis for admissibility of the statements in the recording. Instead, the district court simply made very broad statements that invoked really all of the exceptions in Rule 404B, and that is clearly inconsistent with this court's authority. In the Kendall case and the Biswell case and others we've cited. Now, second, the only admissibility basis that the government attempts to defend on appeal, which is identity, was not a proper basis under the facts of this particular case. And then the third reason that reversal was required is that the district court failed to engage in clear on-the-record findings under the Rule 403B and type of balancing and analysis that's required as a part of a 404B analysis as under the way the U.S. Supreme Court has set out that, the analytical approach that the court must apply there. And this court has said that in many cases as well. And really evidence of other crimes, especially of the kind you had here, which are just really garden-variety type of drug transactions, are particularly subject to misuse by a jury. And really those dangers, we would respectfully submit, were on full display. In this case where Mr. Lujan, he was a significant drug user himself, and he's speaking about these things more than a year down the road. And he simply makes statements about selling to a number of people that, and even as it relates to the particular individual, the confidential informant, Mr. Westbrook, I think his statements are ambiguous at best as to whether he's talking about the specific day, the specific sale that the government chose to charge him with, which was on October 24th of 2017. He wasn't charged with any type of ongoing act. He wasn't charged with any type of conspiracy or anything like that. But he was charged with something very specific. So we have the issue here is that the district court at the pretrial hearing simply says things like, this is appropriate 404B evidence. It's clearly admissible. And then during the course of the trial, the district court invoked every single exception in the rule. And those were carried over in Instruction 12 to the jury. And that just can't be squared with this court's decisions in Kendall and Biswell. And very clearly in Biswell, the court said, a broad statement invoking the rule does not suffice. That's a direct quote from the Biswell case. But that's exactly what happened here, respectfully, is when you have, you know, it's appropriate 404B evidence that's clearly admissible. Well, that is a broad statement invoking the rule that this court held in Biswell does not suffice. And we would respectfully submit that proceeding in that way is an error of law, which constitutes an abuse of discretion under the Vanderwerf case and other similar authority from this court, that proceeding in that way is an error of law that simply cannot be squared with this court's decisions. But even if the court could look past the failure to articulate precisely the 404B evidence before admitting it, then really the only thing that's being defended on appeal by the government, the issue of identity, we'd respectfully submit that that still fails because what you have to have under this court's decision in Comanche is you both have to have relevance to a permissible 404B exception. It's got to be relevant to that. But also, the relevance can't depend on any type of inference that the defendant was acting in conformity with with an improper character trait, really. And here, that would be dealing drugs. And we cited a number of cases. I think we cited Sampson from the Second Circuit and then Simpson and Gomez from the Seventh Circuit in our briefing that said these type of evidence of this type of garden variety drug transaction, which is exactly what's being described by Mr. Lujan to both of these 20 other people and to Mr. Westbrook himself, he's clearly talking about multiple transactions with Mr. Westbrook, is that these courts have recognized that this is the type of evidence that's only relevant through propensity-based reasoning. In this court in the Comanche… Mr. Wray, let me just jump in on this point. I think this is your second point that you sketched out at the beginning, correct? Correct, Your Honor. That is correct. Here's my question. Given that Mr. Lujan's image didn't appear on the video recording of the transaction, didn't the government need to prove identity of the seller with other evidence as part of its case-in-chief? Well, certainly they did have, Your Honor. They had Mr. Westbrook himself testified, right? So there was that evidence of identity. And there was also evidence of identity from these officers themselves, some of whom were… I mean, they were participating there. So the question becomes, are these statements about other transactions, are those properly admitted to show identity under a propensity-free reasoning? Well, then I guess to the extent that the government's theory, 404B theory, is proof of identity, and if the evidence offered would tend to show that, it sounds more like your argument may be that they shouldn't have done it because it was cumulative? Is that what I'm hearing? No, Your Honor, no. What we're saying is this is not the type of evidence that can be properly used to show identity. And I'd respectfully invite the court to some examples that we've seen in the cases, right? The Shumway case from this court is, here you had a person that was stealing artifacts from remote locations, and that's the type of sort of unique signature quality. I frankly think a decent example, what the Burwell case from the D.C. Circuit, they said, you know, to be identity type of evidence, it's got to be something like the wet bandits in the famous Home Alone movie. It's got to be something truly unique. Do the cases always require that kind of same modus operandi type evidence to prove identity, or have courts allowed other proof of identity under 404B? I respectfully, Your Honor, I believe that the better rule of the case is that it's got to be something unique and that identity has to be meaningfully and significantly disputed by a defendant, not in a way to just say, look, the government hasn't made its proof beyond a reasonable doubt, or just because, I mean, identity is in some sense relevant in every single case. But what clearly the cases recognize, and this court's cases recognize, is that in and of itself is not enough to just completely open the floodgates to any prior other crimes, evidence that, of course, could show identity in some sense, but are also subject to the abuses that 404B is designed to prevent, which has long been a part of the common law in this country and is adopted in 404B. And we also would say that the court did not here engage in the balancing of the potential of unfair prejudice against what we would say is slight probative value that's required by Kendall and required by McVeigh and Tan. And there, those cases very clearly say you've got to be specific, clear reasoning in the trial record of that analysis. And respectfully, that is absent here. Well, counsel, hasn't this court said that an implicit 403 determination is permissible? There are cases that say that, Your Honor. Why didn't that happen here when the court addressed and rejected the unfair prejudice argument in its pretrial 404B ruling, and in fact, even excluded part of the interview due to unfair prejudice? Doesn't that suggest that a 403 determination had been made? I would say two things in response to that, Your Honor. First of all, there's not a clear, there's nothing clear in the trial record that that was considered and ruled upon as to the evidence that was admitted. And respectfully, Your Honor, what we would submit is that the Kendall case is the earliest decision from this court that's directly on point. And in those circumstances, and we talked about this in our reply brief, respectfully, I would submit that the court has to follow the earliest on point panel decision when there is a conflict. And I'm not sure if the issue may not have been raised in some of the cases talking about implicit determinations, but respectfully, it's being raised here. And we would respectfully submit that the court should follow Kendall, McVeigh, and Tan that says you have to have specific and clear reasoning in the trial record. And that respectfully did not occur as to the evidence that was in fact admitted. Do I remember correctly that you argued throughout the trial that there was no evidence that the person that sold drugs to Westbrook at the Kendall Street apartment was in fact the defendant? I certainly believe that the issue was the government's proof beyond a reasonable doubt. That's not my question. Go ahead and argue all you want. But please answer my question. Did you argue at trial that there was no evidence that the person who sold drugs to Westbrook from the Kendall Street apartment was the defendant? I did not represent Mr. Lawn at the trial, but I believe his counsel did raise whether there was evidence sufficient to convict him beyond a reasonable doubt, as there is in every case that is there. Certainly, those statements were made, but we would respectfully submit, Your Honor, that that was not sufficient to justify this particular evidence coming in, especially when that theory of admissibility was not clearly articulated in advance. Thank you, Counselor. And I would respectfully request to reserve the remainder of my time for rebuttal. Reserved. Good morning, Your Honors, and may it please the court, Brian Dunn, on behalf of the government. Your Honor, I'd first like to address a little bit of Mr. Ray's argument concerning the statements that were admitted from the recording that's noted as Exhibit 6. I think it's, as we stated in our answer, I think it's better analyzed based on the categories of statements that were admitted, and I think they were kind of pressed together by Mr. Ray. For that reason, Your Honors, I think the primary issue in this case is whether the district court properly admitted a statement made by a defendant where a defendant admits selling narcotics to a C.I. during a controlled purchase, and specifically, whether the district court fairly interpreted the statement by the defendant as a confession to the crime. I think that is the overarching issue in the case. And before I dive into whether it was a fair interpretation of the statement made by the defendant, specifically in Exhibit 6C, I'd first like to compare what the facts were that were testified to at trial, and then compare the defendant's statement in Exhibit 6C. First, the officers and the confidential informant at trial testified that on October 24, 2017, there was a controlled buy orchestrated by police officers using this particular confidential informant. The confidential informant was a lifetime acquaintance who did identify Mr. Lujan in court and identified in photos to the officers. As the court has already mentioned, there's a recording device in the C.I.'s key fob, as well as on his cell phone, but there was no actual recording of the identity of the individual who was selling the narcotics to the confidential informant. The C.I. testified that it was a half ounce of heroin and a half ounce of methamphetamine sold on October 24, 2017, and the recording reflects that. The C.I. then left and gave approximately that amount of methamphetamine and heroin to the officers. And then comparing Mr. Lujan's statement to two officers, as Mr. Ray stated about a year later, he stated that he lived at the Kendall Street apartment for three to four months. He identified the confidential informant in two particular photographs. He stated that he had known the confidential informant his whole life. He stated that he sold methamphetamine and heroin to the informant from the Kendall Street apartment. When asked how many times, he said once or twice. And then when pushed further, he confirmed that on one particular time, he sold a half ounce of methamphetamine and a half ounce of heroin to that particular confidential informant. This was characterized as a admission or a confession throughout the pretrial conference. It was characterized that way throughout trial. Our argument certainly is this was a reasonable inference, a reasonable interpretation of Mr. Lujan's statements to the officers, and therefore it was intrinsic evidence and was not governed by 404B. Given that it was intrinsic evidence, it was properly admitted, it was relevant. The defense counsel argued, as the court mentioned throughout the pretrial conference, that this evidence was in violation of 403. The court found that it wasn't in violation of 403 and specifically excised large portions of the recordings under 403, showing that there was a further, at least an implicit ruling as to 403, which, as the court mentioned, has been found to be appropriate under United States v. Los Cano, Villa-Lobos, which particularly addresses Kendall. And McVeigh, an implicit ruling was found to be appropriate in United States v. Patterson, as well as United States v. Mills. On the 403 determination, why wasn't the clip about Mr. Lujan having sold drugs to over 20 others, even if that's probative of identity, why wouldn't that be unfairly prejudicial? Your Honor, moving to the, well, first of all, our argument is that with respect to the sale to the 20 others, that the court followed the factors in Huddleston, and I think I understand Your Honor's point. We don't feel that it was unfairly prejudicial, and neither did the district court, because throughout the trial, as the court mentioned earlier, the primary argument was identification. Even with the confession, which was argued to not be a confession by defense counsel because of the specific date not being included, the issue of identification was raised throughout the trial, in opening, throughout cross-examination, throughout closing. It was essential, really necessary, for the government to have proved identity, because Mr. Lujan's face was not captured in the actual video. And I think this case is somewhat similar to United States v. Brooks, in which a recording from nine days prior to a drug transaction was admitted in order to establish the identity of the seller. Why couldn't the portion of the testimony about the sale to 20 others just be redacted? And Your Honor, I think that was certainly an issue that was within, obviously, the district court's discretion. Well, it's also within your conduct to proffer it in that form. We can't just blame everything on the district court. You offered it. The government offered it. And Your Honor, that was because of ID and why it was particularly important for the government to establish ID, given that Mr. Lujan's face was not on the video. In other words, it was offered for the proper purpose of showing that it was Mr. Lujan and not someone else, which was put forth throughout the trial and in closing, as a possibility that it was someone else at the apartment who had sold the methamphetamine and the heroin. In this case, the defense counsel brought up Shumway, and I think it's particularly applicable because in Shumway, there was the where Mr. Ray brought up that it was stolen artifacts. They were specifically stolen years prior from a site called Hidden Rock Ruins. Hidden Rock Ruins was the same site where the artifacts were stolen in the day of offense in United States versus Shumway. And that's the same situation here. It wasn't just that Mr. Lujan was a drug dealer who had sold to several other individuals. He had sold specifically methamphetamine, specifically heroin, about an ounce a day to about 20 other individuals. Well, counsel, how do you respond to Mr. Ray's argument that 404B identity evidence should be evidence of a signature crime, the same modus operandi? Shumway was an Archaeological Resource Protection Act case where identity was established through very similar conduct, unique conduct. But here, these transactions are pretty much just garden variety drug transactions that wouldn't single out Mr. Lujan. So why is it even identity evidence in the first place? Well, Your Honor, I think that besides having the signature elements, which was argued in the district court, in particular, this was not just the two narcotics. It was the same apartment. It was the same address. It was the same time period for the three or four months that he sold from that particular apartment. I think that the Shumway case is a particular case concerning stolen artifacts. So I guess it's somewhat interesting. But the cases since Shumway with respect to identity, they've also been extended to drug transactions and not just to their stolen artifacts with particularly interesting facts. As I stated, Your Honor, United States v. Brooks was a cocaine sale. And the previous recorded phone call concerning the same drugs from the same number from the same person was admitted for the purpose of identity. And identity in the same way in that case, defense was arguing that the detective or the TFO that bought directly from Mr. Brooks had not been exposed to Mr. Brooks long enough to be able to identify him in court. And I think that's the exact same facts as what we have currently. And I do believe that the court properly used its discretion and certainly did not abuse its discretion in that manner. It was fully briefed. It was fully argued concerning whether or not the not just the confession or the inextricably intertwined quote or twice statement in 60. The court made a specific ruling as to identity, stated that the sale to others from the same apartment of the same drugs went to show that it was Mr. Lujan, not Esther. And that was obviously a ruling that the proper purpose was identity. Unless you understand any further questions, we would encourage you. So, Mr. Dunn, I just had one question that has to do with the other issue here, the claim of improper argument from counsel.  And it's really, really more of a legal question. Does the standard for prosecutorial misconduct differ for statements made during opening statement as opposed to statements being made during closing argument? I don't think it does, Your Honor. I think it's whether there's a in closing. Certainly, it's a reasonable inference from the record. But my understanding from I don't have a case on hand for this, but in opening statements that the prosecutor must have a reasonable belief that the evidence will present of the evidence that will be presented at trial. And that's certainly what was presented in opening statement in this case. It had been fully briefed. It had been fully noticed that the statement by Mr. Lujan was going to be presented as a confession or an admission. And that's, frankly, why the government believes that it wasn't objected to in opening statement or in closing statement. I'm just, you know, I'm just asking because we call, we don't call it an opening argument. We call it an opening statement. But so I understand your answer. Thank you, Your Honor. Thank you for ceding the rest of your time, counsel. The defendant has about a minute and a half left. My apologies. I was muted. Just very briefly, Your Honor, when we talk about the exact argument that was made at trial by Mr. Lujan's counsel, and I would invite the court to pages 194 and 195 of Volume 4 of the record. What he was saying is he certainly acknowledged that Mr. Westbrook identified Mr. Lujan in some way. He clearly acknowledged that. When he said there was no evidence whatsoever, he was talking about identity. It's certainly not. And a lot of these courts have recognized this. We're just talking about sales of half an ounce of different quantities of drugs. That's not the type of unique signature evidence. And on the questions of intrinsic findings, inextricably intertwined, those weren't relied on by the district court. They've been subject to significant criticism. And even the courts that follow those say it's got to be manifestly clear that that's what we're talking about. That was not the case here. This evidence is ambiguous at best, and the court certainly should not affirm on that ground. And we would respectfully ask the court to reverse. Thank you, counsel. The court cases submitted, counsel, are excused.